UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAMAR A. FORBES,

    *Petitioner*,

v.       No. 21-cv-2175 (DLF)

CARLOS DEL TORO *et al.*,[1]

    *Respondents.*

**MEMORANDUM OPINION**

Lamar Forbes brings a petition for a writ of habeas corpus against Secretary of the Navy Carlos Del Toro and President of the Naval Clemency and Parole Board Randall Lamoureux, Dkt. 1. Before the Court is the respondents' Motion to Dismiss, Dkt. 18. For the reasons that follow, the Court will grant the motion.

**I.    BACKGROUND**

Forbes, who was diagnosed with HIV in 2012, had sexual intercourse with four women between 2013 and 2015. Pet. ¶¶ 20–25. According to Forbes, his "viral load" was "undetectable" in two separate tests in April 2013 and April 2014. *Id.* ¶¶ 22–25. For engaging in "unprotected sexual intercourse with four different women without telling any of the women that he was HIV-positive," Forbes was charged before a general court-martial with four specifications of sexual assault under Uniform Code of Military Justice (UCMJ) Article 120, four specifications of assault consummated by a battery under UCMJ Article 128, and one specification of violating the federally assimilated Virginia law of infected sexual battery law under UCMJ Article 134. *United*

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carlos Del Toro, the Secretary of the Navy, has been substituted for Thomas Harker as respondent.

*States v. Forbes*, 77 M.J. 765, 767–68 (N-M. Ct. Crim. App. 2018) (citing 10 U.S.C. §§ 920, 928, 934).[2] Forbes pleaded guilty to all charges, and the government withdrew the charge of assault consummated by a battery as well as one of the specifications of sexual assault. *Id.* at 767. Forbes was sentenced to eight years' confinement, reduction of paygrade, and dishonorable discharge. *Id.*

After his guilty plea and conviction, Forbes appealed to the U.S. Navy-Marine Corps Court of Criminal Appeals. In relevant part, the court concluded that for purposes of the sexual assault charge, "an HIV-positive individual commits an offensive touching, and therefore bodily harm, when he engages in sexual intercourse without first informing his partner of his HIV status." *Id.* at 771 (relying on *United States v. Gutierrez*, 74 M.J. 61, 63 (C.A.A.F. 2015)); *see* 10 U.S.C. § 920(b)(1)(B), (g)(3) (2018). The court thus rejected Forbes's related arguments that the sexual assault specifications failed to state an offense and that Forbes's consequent guilty pleas were based on erroneous legal standards. *Id.* at 769–73. The Court of Appeals for the Armed Forces affirmed, *see United States v. Forbes*, 78 M.J. 279 (C.A.A.F. 2019), and later denied Forbes's petition for reconsideration, *United States v. Forbes*, 78 M.J. 374 (C.A.A.F. 2019).

Forbes then filed this habeas petition under 28 U.S.C. § 2241. Forbes is now, and was at the time he filed his petition, on supervised release. The respondents move to dismiss Forbes's petition on two grounds. First, they argue that Forbes has no viable claim for habeas relief against them because they are not proper respondents under the "immediate custodian" rule. Mot. at 9–14; *see Dufur v. U.S. Parole Comm'n*, 34 F.4th 1090, 1096–97 (D.C. Cir. 2022) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)). Second, they argue that the petition fails because the military tribunals "fully and fairly considered [Forbes's] claims" or Forbes's arguments were

---

[2] Forbes was also charged with and convicted of making a false official statement under UCMJ Article 107, 10 U.S.C. § 907. He does not challenge that specification here. Pet. ¶ 26 n.2.

2

otherwise not properly presented in military proceedings. Mot. to Dismiss at 14–25; *see Burns v. Wilson*, 346 U.S. 137, 142 (1953).

## II. ANALYSIS

### A. Jurisdiction

As an initial matter, this Court has jurisdiction over both the subject matter and over respondent Lamoureux.[3] *See Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

Under 28 U.S.C. § 2241, the Court has subject-matter jurisdiction over a habeas action if the petitioner is in "custody under or by color of the authority of the United States" or "in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(1), (3); *see Ramsey v. U.S. Parole Comm'n*, 840 F.3d 853, 859 n.2 (D.C. Cir. 2016) (citing *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006)).[4] Forbes currently is on supervised release for his court-martial convictions, which renders him "in custody" within the meaning of the habeas statute. *See Banks v. Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007); *see also Ramsey*, 840 F.3d at 859 n.2. The respondents contend that, although Forbes is concededly "in custody" for the purposes of his petition, they are not the proper respondents for this action because neither is Forbes's "immediate custodian." Mot. at 13 (citing *Padilla*, 542 U.S. at 439). But even assuming that the respondents are correct, the court would still not be deprived of jurisdiction. Although the D.C. Circuit has in the past suggested that a court lacks jurisdiction *over the petition* where the

---

[3] In his opposition, Forbes argues only that Lamoureux is "the correct respondent" in this action. Opp'n at 2, Dkt. 19. Accordingly, the Court will dismiss the petition as to respondent Del Toro on that basis.

[4] No party suggests that the Court lacks subject-matter jurisdiction in this case, but the Court has an "independent duty" to confirm its jurisdiction. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 623 (D.C. Cir. 2017).

3

immediate custodian of a petitioner is not in the territorial jurisdiction covered by the court, *see Rooney v. Sec'y of the Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005), it has since expressly held that the immediate custodian rule is not an issue of subject-matter jurisdiction, *see Dufur*, 34 F.4th at 1096–97; *see also Padilla*, 542 U.S. at 434 n.7 (explaining that the term "habeas jurisdiction" in this context refers not to the subject-matter jurisdiction of a court but rather to the § 2241(a) remedial limitation that district courts may grant the writ only territorially "within their respective jurisdictions").

The Court also has personal jurisdiction over the President of the Naval Clemency and Parole Board, Randall Lamoureux, whose undisputed "principle place of duty" is in Washington, D.C. Pet. ¶ 9. Although the respondents in part purport to bring their motion to dismiss the petition under Rules 12(b)(2) and (3), they never argue that the Court lacks personal jurisdiction over them or that they should have been sued in another venue.[5] Instead, the respondents contend that Forbes has no cognizable claim for habeas relief against them—here or elsewhere—because neither respondent is Forbes's immediate custodian. *See* Mot. at 9–14. Were Forbes to bring an action against the proper custodian, the respondents say, the Court would then "lack[] personal jurisdiction over that individual." *Id.* at 6. But there is no dispute that the Court has the "power to consider a case" against Lamoureux because he is subject to the jurisdiction of this Court. *Kaplan*, 896 F.3d at 510. The Court will thus turn to the merits.[6]

---

[5] The D.C. Circuit has stated that the immediate custodian rule "*implicates* personal jurisdiction . . . [and] venue," *Dufur*, 34 F.4th at 1097 (emphasis added); *see also Ramsey*, 540 F.3d at 859 n.2, but that does not mean that a habeas action against an improper respondent over whom the Court does have jurisdiction fails on those grounds. The Circuit used this language instead to clarify that the immediate custodian rule does *not* implicate subject-matter jurisdiction. *Dufur*, 34 F.4th at 1097.

[6] The Court need not address the argument that the petition fails to comply with the immediate custodian rule for two reasons: first, any such failure does not deprive the Court of subject-matter

4

### B. Article 120 Conviction

Forbes first contends that the sexual assault specifications under Article 120 fail to state offenses under the UCMJ, and that his guilty pleas were accordingly improvident based on incorrect elements, because HIV non-disclosure by someone like Forbes does not cause "bodily harm" to a sexual partner. Pet. at 11–25, 27–30. These arguments, however, cannot support Forbes's petition because they were "fully and fairly" considered by the military courts. *Burns*, 346 U.S. at 142.

It is undisputed that Forbes, who is on supervised release, remains "in custody" for habeas purposes and that habeas standards govern this proceeding. *See* Mot. at 11. In general, "[c]onvicted servicemembers who are still in custody may seek habeas review of their court-martial proceedings." *Scott v. United States*, 351 F. Supp. 3d 1, 7 (D.D.C. 2018) (cleaned up). The Supreme Court has described "habeas review of military judgments . . . as no less deferential than habeas review of state court judgments." *New*, 448 F.3d at 407. In habeas proceedings, "'[i]t is the limited function of the civil courts to determine whether the military have given fair consideration' to each claim raised by petitioners." *Id.* (quoting *Burns*, 346 U.S. at 144); *see id.* at 410 (finding "fair consideration" even in a military judge's "summary disposition" where a

---

or personal jurisdiction, *see supra*; and second, the Court will dismiss the petition on other grounds.

It is unclear how the immediate custodian rule applies in the supervised release context. Traditionally, habeas petitions were a tool available to remedy only actual "present physical confinement." *Padilla*, 542 U.S. at 435. As noted above, however, in more recent years, the Court's "understanding of custody has broadened to include restraints short of physical confinement." *Id.* at 437. To the extent that the immediate custodian rule applies in this context, it is unclear here whether the Parole Board, *see Guerra v. Meese*, 786 F.2d 414, 417 (D.C. Cir. 1986) (suggesting that after parole, "the Parole Commission might then be considered the[] custodian[] within the meaning of the habeas corpus statute"), or the Commanding Officer of Naval Consolidated Brig Charleston assigned "administrative control" over Forbes, *see* Mot. at 11, would be his "immediate custodian." The Court will refrain from reaching this open issue.

5

claim was "weak"); *see also Sanford v. United States*, 586 F.3d 28, 32 (D.C. Cir. 2009) (noting the *New* court's reliance on whether the military court "reasonably found" certain conclusions or had any "fundamental defect[s] in its proceedings" (quoting *New*, 448 F.3d at 409–10)).

Here, the military courts thoroughly evaluated Forbes's arguments about whether an HIV-positive person commits sexual assault within the meaning of then-current Article 120 by having unprotected sex without disclosing his HIV status to his partner. Noting that the case was one "of first impression," the U.S. Navy-Marine Corps Court of Criminal Appeals began by tracing the history of charging theories for nonconsensual potential exposure to HIV. *Forbes*, 77 M.J. at 769. The court principally relied on *Gutierrez*, 74 M.J. 61, which the court read to hold that "engaging in otherwise-consensual sexual activity without telling [a] partner[] that [one has] HIV" is an "offensive touching to which [a] sexual partner[] [does] not provide meaningful informed consent." *Forbes*, 77 M.J. at 769 (second quotation quoting *Gutierrez*, 74 M.J. at 68). In considering whether Forbes's pleas were provident, the court first rejected Forbes's arguments that the plea was questionable "because the military judge relied exclusively on *Gutierrez*." *Id.* at 770. The court probed in detail the jurisprudential roots of *Gutierrez* and then noted that in any event it "d[id] not have the discretion to depart" from the binding precedent of the U.S. Court of Appeals for the Armed Forces. *Id.* at 771; *see also Sanford*, 586 F.3d at 34 (holding that the Marine Corps Court "gave 'full and fair consideration' to [a claim] in light of the fact that its resolution was predetermined by binding precedent"). After examining the language used by the military judge and determining that it comported with statutory requirements, the court then addressed whether the holding of *Gutierrez*—a general assault case under Article 128—applied to sexual assault under Article 120. *Forbes*, 77 M.J. at 771–72. The court reasonably concluded that, given that "the only difference between *Gutierrez* and [the] case [was] that . . . a 'sexual act' [was] an

6

additional element," "offensive touching" and "bodily harm" had the same meaning under each provision. *Id.* For the same reasons, the court determined that Forbes's arguments as to failure to state an offense were meritless. *Id.* at 772–73. On appeal, the U.S. Court of Appeals for the Armed Forces then confirmed that a finding of sexual assault here was consistent with its holding in *Gutierrez*, and it affirmed the conviction in full. *Forbes*, 78 M.J. at 281–82.

Forbes does not contend that the military courts' analyses were unduly cursory or insufficiently attentive to his claims. Instead, he proposes an alternate definition of the full and fair consideration test, arguing that the test merely forbids "civilian courts" from "re-weigh[ing] the evidence" as to factual issues; they may still grant relief, Forbes says, if "the military courts did not apply proper legal standards." Opp'n at 10, Dkt. 19. To support his proposed test, Forbes relies exclusively on out-of-circuit authority, *see id.* at 9–10 (citing *Dodson v. Zelez*, 917 F.2d 1250, 1252–53 (10th Cir. 1990)), and ignores the D.C. Circuit's discussion in *New* and *Sanford*, which rejected a "de novo" test as to a military court's conclusions of law. *Sanford*, 586 F.3d at 32; *see New*, 448 F.3d at 406–08. The Court is thus unpersuaded.

Forbes further argues that the full and fair consideration test does not apply here because the alleged failure of the sexual assault specifications to state an offense is "jurisdictional." Opp'n at 4. Traditionally, as the U.S. Court of Appeals for the Tenth Circuit has explained, "civil review of court-martial proceedings was limited" exclusively to "the question of jurisdiction." *Fricke v. Sec'y of the Navy*, 509 F.3d 1287, 1289 (10th Cir. 2007). It was only in the mid-twentieth century in *Burns*, 346 U.S. 137, that "the Supreme Court extended the scope of civil review of court-martial proceedings, holding that civil courts could consider constitutional claims regarding such proceedings if the military courts had not 'dealt fully and fairly' with such claims." *Fricke*, 509 F.3d at 1289; *see also Edwards v. Vannoy*, 141 S. Ct. 1547, 1567–68 (2021) (Gorsuch, J.,

7

concurring) (explaining that until the 1950s, federal courts could not revisit a final judgment of conviction in a state court unless the court had acted "without jurisdiction").  But this doctrinal background counsels against, not in favor of, abandoning the deferential standard of review here because Forbes's arguments are not jurisdictional in nature.  Forbes erroneously asserts that "[i]f a charge fails to allege an offense under the UCMJ, a court-martial lacks jurisdiction to try it."  Opp'n at 4.  The case he cites, however, *United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F. 2012), states precisely the opposite.  The *Humphries* court explained that earlier Supreme Court precedent had mandated that "where an indictment was found defective for failing to list all elements of an offense, it was necessarily dismissed on jurisdictional grounds."  *Id.* at 212–13 (citing *Ex parte Bain*, 121 U.S. 1, 13–14 (1887)).  It then noted that the Supreme Court has since brought more discipline to its use of the term "jurisdictional"—and overruled *Bain*—by specifically holding that failure to allege elements of an offense in an indictment is *not* a jurisdictional defect.  *Id.* at 213.  Specifically, in *United States v. Cotton*, 535 U.S. 625, 630–31 (2002), the Court rejected an "elastic concept of jurisdiction" in favor of one defined by "a court's power to hear a case" and explained that "the objection that [an] indictment does not charge a crime against the United States goes only to the merits of the case."  *Id.* at 631 (cleaned up).  Because there was no dispute that the court-martial had jurisdiction over the defendant and the offense, and because the "defects in [the] specification [were] raised for the first time on appeal," the *Humphries* court determined that the same type of arguments Forbes raises here had been forfeited and the conviction could be reversed only for plain error.  *Humphries*, 71 M.J. at 213 & n.4 (citing *Cotton*, 535 U.S. at 631–32).  Thus, *Humphries* only supports the conclusion that Forbes's arguments about the correct interpretation of Article 120 do not relate to the jurisdiction of the military tribunals that adjudicated his plea and appeals.

Finally, Forbes contends that the military courts' holding amounted to an impermissible ex post facto change in the law. But this argument appears to be no different from the one that the military courts rejected—that the correct interpretation of the relevant UCMJ provisions is the one Forbes proposed, rather than the one the courts reached in his case. *Accord* Opp'n at 7–8 (arguing that Forbes preserved his ex post facto argument by contending in his military court proceedings that his interpretation was correct and consistent with case law). To the extent Forbes tries to raise a new argument beyond that, it was not properly raised before the military courts. In "[m]ilitary courts, like most civilian courts," a failure to timely object results in procedural default of a claim; as in review of state court convictions, that default is excusable on habeas review only upon "a showing of cause and prejudice." *Kendall v. Army Bd. for Correction of Military Records*, 996 F.2d 362, 366 (D.C. Cir. 1993); *see generally Wainwright v. Sykes*, 433 U.S. 72 (1977). Any new argument is thus not properly before the Court here absent a showing of cause and prejudice, which Forbes has not attempted to demonstrate.[7]

Because the military court fully and fairly considered Forbes's arguments about bodily harm and offensive contact, and because of the "nonjurisdictional status of defective specifications," *Humphries*, 71 M.J. at 213, Forbes raises no viable ground for habeas as to his sexual assault convictions.

### C. Article 134 Conviction

Forbes also challenges his conviction under UCMJ Article 134, which makes punishable "'crimes and offenses not capital' that are 'not specifically mentioned' in the UCMJ," *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018) (quoting 10 U.S.C. § 934), and "which

---

[7] Forbes erroneously cites the plain-error standard, which applies for review of unpreserved errors on *direct appeal*. *See* Opp'n at 8–9.

9

include, inter alia, crimes and offenses prohibited by the United States Code," *id.* (cleaned up). Forbes was charged under Article 134 on the theory that he violated the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, which in turn incorporates into the Federal Criminal Code "any act or omission" in a federal enclave which, "although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated." *Id.* § 13(a).  Forbes is alleged to have violated the ACA by committing infected sexual battery in violation of Virginia Code Ann. § 18.2-67.4:1(b). Pet. at 30–31. In his petition, Forbes argues that the ACA does not incorporate that Virginia statute because Congress has already "passed a battery-type statute which includes within its ambit the intentional exposure of other persons to a risk of HIV transmission," *id.* at 32 (citing 18 U.S.C. § 113), and that even if it does, prosecuting the ACA offense under Article 134 "violates the preemption doctrine" of the UCMJ because it would be easier to prosecute than crimes under Articles 118 and 120, *id.* at 33.

      Forbes does not contest that he failed to raise these arguments in his military appeals or that such failure would ordinarily be a bar to relief in this Court; instead, he suggests that they must be reviewed regardless because the asserted errors are, again, "jurisdictional." Opp'n at 6. For that proposition, he cites *United States v. Robbins*, 52 M.J. 159 (C.A.A.F. 1999), which summarily held that such a defect is "jurisdictional" because "[i]f the [state] offense was improperly assimilated, it was not cognizable by a court-martial." *Id.* at 160. But to the extent that *Robbins* suggests that Forbes's claims are jurisdictional, its holding is abrogated by *Cotton* and *Humphries*. Forbes was not charged with violating Virginia Code § 18.2-67.4:1(b). Rather, he was charged with violating UCMJ Article 134. His argument is that Article 134 does not apply to the charged conduct—either because other UCMJ provisions imply as much, or because Article

134 does not incorporate (through the Assimilative Crimes Act) Virginia's infected sexual battery statute. That is, his argument is that for one of those two reasons, the charge "failed to state an offense" under the UCMJ. Pet. at 32; *see also* Opp'n at 7 (citing *United States v. Costianes*, ACM 38868, 2016 WL 4191236, at *1 (A.F. Ct. Crim. App. 2016) ("The basis for the preemption doctrine is the principle that, if Congress has occupied the field for a given type of misconduct, then an allegation under Article 134, UCMJ, fails to state an offense.")).[8] Failure to state an offense, however, is not a jurisdictional defect, as it does not "deprive a court of its power to adjudicate a case." *Cotton*, 535 U.S. at 630; *see Humphries*, 71 M.J. at 212–13; *supra* at 7–8. The Court thus rejects Forbes's argument that his claim is jurisdictional and holds that it is procedurally defaulted. *See Kendall*, 996 F.2d at 366.

## CONCLUSION

For the foregoing reasons, the Court grants the respondents' motion to dismiss. A separate order consistent with this decision accompanies this memorandum opinion.[9]

*[signature]*

DABNEY L. FRIEDRICH
United States District Judge

December 5, 2022

---

[8] Although the Air Force Court of Criminal Appeals, citing pre-*Humphries* precedent, has stated that preemption is "a question of subject-matter jurisdiction," *Costianes*, 2016 WL 4191236, at *1 (adhering to *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008)), that court has not reconciled its holding with *Humphries*. The reasoning in *Costianes* runs directly contrary to that in *Humphries*, and its summary conclusion is not persuasive.

[9] In a conclusory sentence of his brief in opposition, Forbes asks the Court to grant summary judgment in his favor. But Forbes has not complied with any of the procedural requirements for moving for summary judgment, and for the reasons stated, the Court agrees that his petition must be dismissed.